EPSTEIN & BRO., AND ECKSTEIN & CO., APPELLANTS, vs. M. FERST & CO., F. R. SWEAT AND T. T. ELLISON, APPELLEES.

1. A decree of a court of chancery stating that the same is without prejudice to a party is, to such party, the same as no decree, and will not support a plea of *res adjudicate*, and the same matters in issue in the original suit can be again heard and determined.

2. A plaintiff on November 2d, 1885, filed a declaration with common counts, but no bill of particulars. No præcipe had been filed or process issued in the case, the declaration being the first paper filed. Together with such declaration was a paper which, after stating venue and title of the cause, was in the following form: "And now comes Farley R. Sweat, defendant in this cause, and waiving process of summons, or other notice, and says that he acknowledges that he is indebted to the plaintiff, (naming him) "in the sum of five hundred and twenty-three 09-100 dollars, with interest at seven *per centum per annum* from the first day of October, A. D. 1885, as alleged in the declaration that he consents that the plaintiff have judgment for said sum, to be entered on the first Monday in November, A. D. 1885.

October 31st, 1885. F. R. SWEAT.

The clerk upon this paper, without proof of the execution of the same, or appearance of the defendant, entered a judgment for the amount named in the paper: *Held*, That such judgment was without authority of law, and was void.

3. Clerks of the Circuit Court in this State have no authority to enter judgments upon such a confession as is set forth in the preceding head-note, made without service of process, when no suit is pending, no appearance of defendant, and there is no proof of the execution of the confession of judgment.

4. Parties having void judgments are not judgment creditors so that they can attack fraudulent conveyances made by their debtors.

Appeal from the Circuit Court for Madison county.

The facts in the case are stated in the opinion of the court.

*J. N. Stripling,* for Appellants.

On October 15th, 1885, F. R. Sweat executed and delivered to M. Ferst & Co., of Savannah, Ga., a mortgage on the stock of merchandise then in his possession, in his place of business at Madison, to secure the payment of a note of the same date for $1,300, payable to said Ferst & Co. one day after date.

Sweat remained in possession of the stock of goods thus mortgaged and continued to sell them in the usual course of trade.

There was an understanding between Sweat and Ferst & Co. that the daily sales should be turned over to E. W. Irvine, as the agent of Ferst & Co.

That Ferst & Co. were to advance goods to Sweat from time to time in sufficient quantities to keep his stock replenished, and to enable him to continue his business, and that the money arising from the daily sales was to be applied according to Sweat's direction, either to the liquidation of the mortgage indebtedness or in payment of the bills for new goods. Sweat was also to have enough out of the business to maintain himself and family; to pay clerk hire, freights, etc. See evidence of J. C. Grovenstein, p. 35. See evidence of E. W. Irvine, p. 37. See evidence of F. R. Sweat, p. 39.

The record, pages 2 and 7, shows that the mortgage was given October 15, 1885, and that Sweat remained in possession from that time until the 19th day of November following, undisturbed by Ferst & Co., during which time he (Sweat) sold the goods, according to his testimony, p. 39, "*as fast as he could.*"

During the whole of these thirty-four days, Sweat, selling the goods "*as fast as he could,*" did not, according to Irvine's testimony, p. 38, turn over any

money for Ferst & Co.   It is true that Sweat says, p.. 39, he "*thinks*" he turned over the sale of the first. two or three days, but Irvine, as above stated, posi- tively denies it, and Ferst & Co., nowhere claim that he did.   Sweat, in his cross-examination, p. 40, admits that the only payments made by him were $350 on the· day the mortgage was executed, p. 9 (evidently "hush money,") and $100 (more hush money) a day or two· before the commencement of the foreclosure suit. These two payments were both made to Apple.  Joseph Ferst, p. 48, says that the $350 was credited October 19th and the $100 November 16th; that these payments. were made to Apple and that he probably received them a day or two before.

From the evidence and the record in the case, the court, in my opinion, can not reasonably escape the· following conclusions:

I. That there was a verbal understanding and agree- ment between Sweat and Ferst & Co. that the former· should remain in possession of the mortgaged property, with power to sell.

II. That the daily sales were to be turned over to E. W. Irvine, as the agent of Ferst & Co., and that Sweat had the option of directing the application of the· money in one of two ways:   Either to the payment of the mortgage debt, or to payment for new goods.

III. That Ferst & Co., with a resident agent in Mad- ison, authorized to receive the daily sales, and with a traveling agent who returned to Madison  within eight. or ten days after the execution of the mortgage, made no demand on Sweat for the money which should have· been turned over daily.

IV. That Sweat was to have a maintenance for him- self and family out of the  mortgaged goods, and also· enough to pay clerk hire, freight bills, etc.

V. That Sweat remained in custody of the mortgaged property for the period of thirty-four days, during which time he sold them "as fast as he could," and from their own allegation, p. 9, reduced the stock from $2,500 to $1,300.

Upon this state of facts it is respectfully contended that the decree of the Circuit Court dismissing the complainants' bill was erroneous.

A mortgage of a stock of goods by the owner thereof, under which the mortgagor is permitted by the mortgagee to sell the goods at his discretion, or in the usual course of his business, is fraudulent and void as to the credits of the mortgagor. Logan vs. Logan, 22 Fla. 561. Pearce on Mortgages of Merchandise, sec. 1, and numerous cases there cited.

The reservation for the maintenance of Sweat and family renders the mortgage void. Bump on Fraudulent Conveyances, p. 391.

The fact that the agreement that Sweat should remain in possession, with power to sell, does not appear on the face of the mortgage, makes no difference. We attack it because the agreement was made verbally and because that agreement was carried into effect by Sweat's undisputed possession and sale of the goods for a period of thirty-four days. Pierce on Mortgages of Merchandise, secs. 41 and 43.'

Possession under such circumstances one day renders the mortgage void as to creditors. Pierce on Mortgages of Merchandise, sec. 10.

Admitting that Sweat remained in possession as Ferst & Co's. agent, and that he received the money arising from the sale of goods for their benefit, it makes our case only that much stronger.

Let us suppose that Apple, Ferst & Co's. accredited agents, had taken possession. It will not be pretended

that any lien remained by virture of the mortgage after
he had received money enough from the sale of the
goods to pay the mortgage indebtedness.

The receipt of the money by their agent was their
receipt, and if he failed to account to them it was their
loss.

If Sweat was their agent the fact that he was indebted
to Ferst & Co. did not change or alter his relations or
liabilities as such, nor does it relieve Ferst & Co. from
liability to account for acts done by him within the
scope of his authority.

Sweat had authority to sell. See Record, p. 8. Tes-
timony of Ferst, p. 47.

The appellees' answer is: That these questions have
been adjudicated in a former trial.

The facts upon which this claim is based are as fol-
lows: On November 19th, 1885, appellees filed in the
Circuit Court of Madison county their bill to foreclose
the mortgage in question, praying for foreclosure, in-
junction and receiver. Rec. p. 2, and pp. 7 to 11.

On the second day of November, previously, the
appellants had obtained judgments in the Circuit Court
of Madison county against Sweat. Rec. pp. 50 and
53.

Executions upon these judgments were placed in
the hands of the sheriff on the 21st day of the same
month. See copies of judgments and executions. Rec.
pp. 50 et seq.

The endorsements on the execution of Epstein &
Bro. shows that it went into the hands of the sheriff
November 2, but this is admitted to be a clerical error.
The record shows that the execution was not issued
until November 19th, and it consequently could not
have been placed in his hands prior to that date.

The appellants, being judgment creditors, conceived the idea that their right could be adjudicated in the foreclosure proceedings and consequently made application to the court (after notice, Record, p. 13) to be admitted as parties defendant in said proceeding, and an order was made to that effect November 27. Record, p. 15.

Appellants filed an answer on January 4, 1886, (Record, p. 15), which was subsequently treated as a demurrer, to appellees' bill of foreclosure.

On the same day, January 4, 1886, appellants filed their cross-bill praying substantially the same relief sought in this proceeding. Record, p. 16.

On February 13, 1886, the appellees filed their demurrer to the above mentioned cross-bill. Record, p. 18.

On March 27, 1886, the answer of appellants, treated and considered as a demurrer, to appellees' bill of foreclosure was overruled, and at the same time the appellees' demurrer to appellants' cross-bill was sustained and said cross-bill dismissed (Record, p. 20); but said decree was subsequently modified upon appellants' petition for rehearing so as to be without prejudice to their rights. Record, p. 22.

The dismissal of the cross-bill "without prejudice," etc., saved the appellants' right to institute other proceedings. Anderson's Law Dic., p. 801, and cases cited.

The appellants in this proceeding were never formally dismissed as parties defendant to the foreclosure suit of Ferst & Co. vs. Sweat, and that suit proceeded to a final decree, which is urged as a bar to the present suit. That decree does not appear in the record, but its presence is not necessary or material to the settlement of the questions here presented. The record, p.

29, shows that such a decree was rendered; it is no-where denied, and in the consideration of the case the court will treat it upon the hypothesis that it was reg-ular and in all respects conformable to the requirements of law in respect to decrees of foreclosure. Seymour vs. Creswell, 18 Fla. 29.

The record, p. 29, advises the court fully what the decree was. It was simply a decree, in the language of appellees' answer, *"forever barring them, and every of them, of all right and equity of redemption in the said mortgaged property."*

The question raised in these proceedings could not have been decided or passed upon in the foreclosure suit of Ferst & Co. vs. Sweat *et al.* Under the state of the pleadings in that proceeding, after the dismissal of the cross-bill, the only issue that remained was their right to *redeem,* and the only decree that properly could have been rendered was the one mentioned in the record, foreclosing whatever right they had of *re-deeming.* The fact that they were made parties de-fendant at their own solicitation does not alter their relation to the case, or sacrifice any of their rights not legally involved. There is no difference in the rights or relations of a party to a suit who voluntarily appears and one who is forced into court by its process.

Reduced to its last analysis, the status of these ap-pellants as defendants in that suit, after the dismissal of their cross-bill, is this: They are parties defendant, the same as if brought in by process, against whom no allegation is made in the bill; they are not shown to be interested in any manner, nor is there any averment that they owe any duty or obligation in relation to the mortgage indebtedness. On the contrary, the record shows affirmatively that they were not proper or nec-essary parties; that at the time the bill was filed they

JANUARY TERM, 1895. 505

Epstein & Bro. et al. v. Ferst & Co. et al.—Argument of Counsel.

had no lien or other interest that gave them the right to redeem; nor had they a right at that time to file any kind of a bill in equity to set aside the alleged fraudulent conveyance. To enable them to have done this they should, at the time of the filing of the bill of foreclosure by Ferst & Co., have had a lien by judgment and an execution, based thereon, in the hands of the sheriff. Bump on Fraudulent Conveyances, pp. 521 and 523.

It was because these appellants were not in this attitude that the court denied the relief prayed in their cross-bill. See testimony of Judge Vann. Record, p. 37.

It is a fundamental principle that a judgment to be a bar must go to the merits of the controvesy. Wells' Res Adjudicata, sec. 13.

The whole record shows abundantly and conclusively that the case was never decided upon its merits in the case of Ferst & Co. vs. Sweat. For these reasons it is respectfully submitted that the decree should be reversed.

*S. Pasco* and *C. W. Stevens*, for Appellees.

The rights of the plaintiffs in appeal as to the subject matter of the litigation were settled by the final judgment in the foreclosure suit. The case is res adjudicata. Mattair vs. Card, 19 Fla. 455. They were made parties to the foreclosure suit on their own motion. The same issues of fact and of law were presented there which are not now relied upon. Everything which was urged in that suit was settled by the judgment therein. Aurora City vs. West, 7 Wallace, 82; Wells, Res Adjudicata, 215 et seq.; County Commissioners of Duval County, 22 Fla. 308.

The character of the mortgage as well as the question to whether or not the plaintiffs were lienors at the installation of the foreclosure suit was in issue and must be regarded as decided by the result of that suit. Record, p. 36; Smith vs. Croom, 7 Fla. 195. The testimony of the judge who heard the cause as to the particular grounds upon which he rested his decision can not affect the judgment. The insertion of the without prejudice clause could not change the effect of the judgment. And it does not follow that they took the proper course. They should have had the case dismissed as to them instead of submitting to a foreclosure of their rights in the property, if any they had. And it may well be doubted whether the modification should have been made unless the decree modified had been first opened.

2. The mortgage was not fraudulent. The mortgagor had no power of sale till after its maturity. The arrangement in effect after its maturity was not fraudulent. The power of sale was for the benefit of the mortgagees. It was the speediest way of discharging the indebtedness due them. Sweat had a right to prefer them to other creditors. Sweat's property was under their attachment when he mortgaged it. The mortgagees denied that Sweat had any reserved right in the property except the equity of redemption. Robinson vs. Elliott, 22 Wallace 513, 524; Bump on Fraudulent Conveyances, 60 and 61, note; McKeown vs. Coogler, 13 Fla. 866; Harden vs. Wagner, 22 W. Va. 356; Etheridge vs. Sperry, Watt vs. Garver, U. S. Sup. Ct. No. 186, October Term, 1890, not published up to Vol. 138.

The entire proceeds of sales were to be theirs. This issue was tried before the chancellor after a full hearing and upon abundant testimony, and his findings as

to the facts are certainly entitled to the same credit as to the verdict of a jury. It is sustained by the evidence.

Execution creditors or other lienors could have subjected the equity of redemption to sale to satisfy their indebtedness. They were not hindered or delayed according to the meaning of the statute. Record, p. 41. This mortgage had been attacked as fraudulent in an attachment suit brought against Sweat by J. & H. Mann & Co. Sweat was represented in this attachment suit by the same counsel that here represents the plaintiffs. He there succeeded in getting a verdict from the jury in favor of the defendant and sustaining the mortgage, and the arrangement carried on under it is as lawful and honest. The plaintiffs have voluntarily selected as their counsel a solicitor who would seem to be estopped from an attack upon the mortgage upon this same ground made by the attacking creditors.

3. The plaintiffs are now lienors and have no proper standing in court to attack the mortgage or the judgment of foreclosure based upon it. Their judgments are void. There was no service of process upon the defendant Sweat. He never appeared in the cause. A voluntary consent to a judgment entered into before the institution of a suit is not an appearance. If it was regarded as a power of attorney to confess judgment, under our statute (Thompson's Digest, p. 350, Chap. 6; Sec. 2), by the clerk when the attempted judgments were entered, his action, in so doing, was contrary to law and the judgment was void in each case. There is no statutory proceeding in this State for entering judgments in such cases in the Circuit Court, and no authority for entering a judgment without making proper proof of an actual indebtedness.

before the clerk. Snell vs. Densur, 17 Fla. 234; Blount vs. Gallaher, 22 Fla. 92.

4. There is no merit in the plaintiffs' case. If they were to succeed they could gain nothing except by the consent or collusion of the mortgagor. Their judgments if valid are not a lien upon Sweat's property so far as he is entitled to the protection of the homestead law.

LIDDON, J.:

Appellants filed their bill of complaint in the Circuit Court against the appellees. The respective firms of complainants alleged that they were judgment and execution creditors of the defendant F. R. Sweat, and the purpose of the bill was to set aside, as fraudulent against creditors, a mortgage upon a stock of merchandise made by said Sweat to his co-defendants Ferst & Co. The defendant T. T. Ellison was made a party because he had been appointed a receiver in proceedings by Ferst & Co. to foreclose the said mortgage, and had, by virtue of an order of the court, taken possession of the mortgaged property. The complainants in the present case upon their own application had been made parties defendants in the foreclosure proceedings of Ferst & Co. against Sweat, and had sought as prior lienors and judgment creditors to defeat the mortgage upon substantially the same allegations of fraud as are contained in their bill of complaint in the present case. In such proceedings they had filed an answer and a cross-bill. Their answer, being considered as a demurrer, was overruled, and on demurrer thereto, the cross-bill was dismissed. This order of dismissal was general, but the said defendants (complainants in the present case), upon notice, afterward obtained a modification of the decree, wherein it was decreed "that the

## JANUARY TERM, 1895. 509

Epstein & Bro. et al v. Ferst & Co. et al.—Opinion of Court.

decree of this court, * * whereby the demurrer of the defendants I. Epstein & Bro. and G. Eckstein & Co. to the bill of complaint was overruled, and the demurrer of the complainants to the cross-bill of the defendants I. Epstein & Bro. and G. Eckstein & Co. was sustained and cross-bill dismissed, be and the same is hereby modified so that the same shall be without prejudice to the rights of the defendants I. Epstein & Bro. and G. Eckstein & Co. to take such other proceedings as they may be advised is necessary to assert their rights."

The defendant answered the bill of complaint, and the first matter of defense urged in the answer is, that the matters thereof had already, in the proceedings of Ferst & Co. vs. Sweat *et al.*, been adjudicated in defendants' favor. Various other matters were alleged in the pleadings, and testimony was taken by the respective parties.

Such portions of the pleadings and proof as are necessary to the proper understanding of the points decided in this opinion will be hereafter referred to. The bill of complaint on final hearing was dismissed, and from this decree an appeal is taken.

First, as to the defense of *res adjudicata :* The present complainants were parties, upon their own motion, to the proceedings in which the mortgage now sought to be attacked was foreclosed. It is useless to discuss whether in such proceedings their rights in the matter were or could have been properly adjudicated. By the practically unanimous agreement of the authorities, a decree of a court of chancery, especially one dismissing a bill of complaint, and stated to be without prejudice to a party, is, as to such party, the same as no decree, and will not support a plea of *res adjudicata.* The very same matters in issue in the original suit can

be again heard and determined. 2 Daniell's Chancery Pleadings and Practice (6th ed.), 994; 2 Beach's Modern Equity Practice, § 644. In a late decision in Rhode Island (Reynolds vs. Hennessy, 17 R. I. 169, text 175, 20 Atl. Rep. 307, 23 Atl. Rep. 639) we find the following: "The court dismissed the bill without prejudice to the right of the complainant to prosecute the present action at law, which had then been brought. The intention and effect of such a reservation in a decree are, by express terms, to prevent it from operating as a bar to another suit. A dismissal 'without prejudice' leaves the parties as if no action had been instituted. Magill vs. Mercantile Trust Co., 81 Ky. 129; Lang's Heirs vs. Waring, 35 Ala. 625, S. C. 60 Am. Dec. 533; Durant vs. Essex Company, 7 Wall. 107, 109; Ballentine vs. Ballentine (Pa.), 15 Atl. Rep. 859. It has been held that such a reservation prevents the bar, even though it has been erroneously incorporated in the decree. Wanzer vs. Self, 30 Ohio St. 378; Gunn vs. Peakes, 36 Minn. 177, 30 N. W. Rep. 466." Reynolds vs. Hennessy, 17 R. I. 169, text 175, 20 Atl. Rep. 307, 23 Atl. Rep. 639. See also Northern Pacific R. R. Co. vs. Paul, M. & M. Ry. Co., 47 Fed. Rep. 536; County of Mobile vs. Kimball, 102 U. S. 691, text 695; Mobile & Ohio R. R. Co. vs. Davis, 62 Miss. 271; Ragsdale vs. Vicksburg & Meridian R. R. Co., Ibid, 480; 2 Black on Judgments, § 721.

The complainants in the suit of Ferst & Co. vs. Sweat et al. prosecuted their bill for foreclosure to final decree. This final decree is not in the record. We can not tell whether complainants in the present case were or were not named as parties defendant in said decree, or whether the case was treated as dismissed as against said defendants. The burden of proving this defense rested upon the defendants, and in the absence of the

final decree from the record we can not say the present complainants were parties defendants to it. From such of the record as is before the court, they seem to have been eliminated from the case. From what has been said, it follows that there was no efficacy in the defense of a former adjudication.

The complainants claim to be judgment creditors of the defendant Sweat. It is conceded that it is necessary that they should be such judgment creditors before they can maintain their present suit. The defendants, Ferst & Co., in effect, deny that the complainants are such judgment creditors—alleging in their answer that as to the judgments and executions upon which the complainants base their claims, defendants are informed and believe that the same are illegal and void, and deny that the same were properly obtained. The judgments in favor of the two complainants severally were practically in the same form (a slight difference between them being hereinafter noted). The declaration in either case contained only common counts, but contained all the usual common counts known to the law. No bill of particulars was attached to either declaration, and both were filed November 2d, 1885. On the same day, in the case of Eckstein against the defendant Sweat, was filed a paper in the following words and figures:

"In the Circuit Court, Madison County, Fla.
Gustave Eckstein, doing business under the name and style of Gustave Eckstein & Co. vs. Farley R. Sweat.

And now comes Farley R. Sweat, defendant in this cause, and waiving process of summons, or other notice, and says that he acknowledges that he is indebted to the plaintiff, Gustave Eckstein, doing business under the name and style of Gustave Eckstein & Co., in the sum of five hundred and twenty-three 09-100

dollars, with interest at seven *per centum per annum* from the first day of October, A. D. 1885, as alleged in his declaration; that he consents that the plaintiff have judgment for said sum, to be entered on the first Monday in November, A. D. 1885.

F. R. Sweat.

Oct. 31st, 1885.
Attest:   J. N. Stripling.''

A similar paper, except that the signature of Sweat was not attested, and the amount of indebtedness mentioned was $769.48, was filed in the case of Epstein & Bro. vs. Sweat.   Judgment in the same form was entered in each case.   The Eckstein judgment was as follows:

"In the Circuit Court, Third Judicial Circuit of Florida, Madison County.

Gustave Eckstein, merchant doing business under the firm name of Gustave Eckstein & Co., vs. Farley R. Sweat.

And now, this the 2d day of November, A. D. 1885, comes the plaintiff, by his attorney W. R. Boyd, and moves for a final judgment; and the defendant Farley R. Sweat having waived process of summons and further notice, and consenting to a judgment for the amount specified in the plaintiffs' declaration, with interest at 7 *per cent.* from the first day of October, 1885; and the damages having been assessed by the clerk at five hundred and twenty-six dollars and fourteen cents ($526.14) principal and interest: Therefore it is considered by the court that the plaintiff Gustave Eckstein do recover of and from the defendant Farley R. Sweat the sum of five hundred and twenty-six 14-100 ($526.14) dollars, together with their costs, now taxed at one 43.100 ($1.43) dollars, and that the said plaintiff have execution therefor.   *   *''

It does not appear that there was any process, or præcipe for same in the case. The question arises, what is the force and effect of such a judgment? Can a clerk of the Circuit Court, who is purely a ministerial officer with only statutory powers, enter a valid judgment in a proceeding of this kind? Admitting such a paper to be a confession of judgment, had the clerk the authority to enter a judgment upon such a confession made without service of process, when no suit was pending, and without any appearance by the defendant or any proof that he executed such a confession. Clearly there is no statutory authority for such action in this State. The only statute at that time upon our statute books providing for judgments by confession were expressly limited to the courts of justices of the peace. McClellan's Digest, sec. 63, p. 642, sec. 71, p. 643, and subdivision 7 of sec. 6, p. 630. The only circumstances in which the clerk could enter a judgment in an ordinary action at law are set forth in the statute (sec. 36, p. 82 McClellan's Digest). Judgment upon confession before suit brought is not included in the act. We think the judgment void for want of any power or jurisdiction to enter it. The paper purporting to be a confession of judgment did not specially authorize the clerk to enter it. Admitting, for the sake of the argument, that the clerk might, under any circumstances, enter a judgment upon a confession of judgment before suit brought, he could not do so under the circumstances of the present case. We think the judgment void not only for want of jurisdiction over the subject-matter, but for want of jurisdiction over the person of the defendant. It is not shown that the defendant appeared in the case. There was no proof before the clerk that the defendant signed the paper upon

33

which judgment was entered. All that can be said of it is, that it purported to be signed by the defendant. It would be a most dangerous doctrine to permit clerks to enter judgments upon papers of this character without any proof that they are genuine. Even in those States which permit a judgment to be taken upon a power of attorney given for that purpose, it is held that judgments entered upon such powers of attorney without proof of their execution, are void for want of jurisdiction obtained of the defendant. Gardner vs. Bunn, 132 Ill. 403, 23 N. E. Rep. 1072, 7 L. R. A. 729.

From what has been said it follows that the complainants (appellants here) are not judgment creditors, and are not in a situation to attack the fraudulent conveyance by their debtor. This being the situation, all that part of the record alleging, and tending to prove, a fraudulent conveyance is excluded from the consideration of the case.

There is no error in the record, and the decree of the Circuit Court is affirmed.