## MEMPHIS & LITTLE ROCK RAILWAY CO., AS REORGANIZED, V. STRINGFELLOW.

1. RAILROADS: *In hands of receiver: Who liable for negligence.*
    A railroad corporation is not liable for the negligence of the servant of a receiver who is operating the road. His possession is not theirs, and they cannot control either him or his employes.

2. PRACTICE: *Misjoinder in tort.*
    Where a complaint for a tort shows no liability as to part of the defendants, a general verdict and judgment against all will be arrested as to those not liable, and stand as to the others.

3. RAILROADS: *Negligence.*
    This was a case of premature announcement of a station, causing a passenger to alight in the dark at wrong place. For the facts, which are too numerous for a syllabus, see the opinion.—REP.

APPEAL from *St. Francis* Circuit Court.
Hon. M. T. SANDERS, Circuit Judge.

*U. M. & G. B. Rose* for appellants.

It is not negligence for a railroad's servants to call out the name of a station before reaching it, nor was it so to stop before crossing another railroad, nor do the two acts together constitute negligence. The call is only designed to admonish passengers that a particular station is near, that those destined there may prepare to alight. (*51 Mich., 236; 47 Am. Rep., 566; 12 Am. & Eng. Ry. Cases, 163; 92 B., 66, reported 7 Moak, 119; L. R., 3 Exch., 150; 23 Penn. St., 147.*) "The result of the cases seems to be that the liability of the company rests on the fact whether the passengers were warranted in forming the conclusion that the final stand-still was arrived at; but that the calling out the name of the company's station by the company's servants is not enough to authorize the passengers to assume that

Memphis & Little Rock Railway Co., as reorganized, v. Stringfellow.

this is the case, in the absence of other circumstances." *1 Cent. Law Jour., 335.*

2. The verdict is excessive. The actual damages amounted to only $135, leaving $1,115 for physical suffering.

3. The motion in arrest should have been sustained. There were two defendants; there was no joint wrong; hence the verdict, which does not specify the defendant against whom it was directed, is fatally defective. *5 J. J. Marsh, 676 ; 7 Wis., 219 ; 25 Ill., 42.*

*Sanders & Husbands* for appellee.

1. Although the facts in this case are undisputed, it is for the jury and not for the judge to determine whether proper care was given, or whether they establish negligence. *17 Wall., 964; Redfield on Law of Rys., vol. 2, p. 231; 1 McQueen, H. L. Cases, 748 ; 38 N. Y. (11 Tiff.), 455; 17 Mich., 99.*

While the calling of a station before reaching it, nor the stopping of a train at a crossing are not negligence if properly done, yet in this case there was wanton and unjustifiable departure from the common usage, such as to render the company liable as guilty of gross negligence. *Wharton on Negligence, secs. 647, 379, 371, 650, reference 5 ; St. Louis, I. M. & S. Ry. v. Cantrell, 37 Ark., 522 ; 31 Ind., 408.*

Reviews the cases cited by appellant's counsel, and argues that they are of the class spoken of by Wharton on Negligence, section 650, note 5, as *extreme cases*, and do not give the true rule. See *7 Irish Rep., C. L., 40 ; L. R., S. B. Div. 85, 1875 ; L. R., 2 Exch., Div. 248, 1876.*

2. The verdict not excessive. The circuit judge heard all the testimony, saw the exhibitions of personal injury, and refused a new trial.

3. There was no misjoinder. (*39 Ark., 162 ; 30 Ark*,

*399; sec. 4564, subd. 4, and sec. 4567 Gantt's Digest.*)    The company was the owner of the road, and·interested, as the damages would be paid out of the profits of the road.

1. RAIL-
ROADS:
In hands
of receiver:
Who liable
for dam-
ages.

SMITH, J.    In this action, brought by a passenger to recover damages for personal injuries, the railroad company and its receiver were jointly sued.    The complaint alleged that at the time of the injury the road was operated under the management of E. K. Sibley, who was appointed receiver under a decree of the Circuit Court of the United States for the Eastern District of Arkansas.    The answer denied negligence and averred contributory negligence in the plaintiff.    The following verdict was returned:  "We the jury find for the plaintiff and assess the damages at $1,250."    The defendants filed separate motions in arrest of judgment, on the ground that the verdict was general, and did not fasten the liability on either of them.    These were both overruled.

The complaint states no cause of action against the railroad company.    "The corporation itself cannot be held responsible for the negligence of servants of a receiver operating the road.    The receiver's possession is not the possession of the corporation, but is antagonistic thereto, and the company cannot control either the receiver or his employes."    *Pierce on Railroads, 285; High on Receivers, sec. 396; O. & M. R. Co. v. Davis, 23 Ind., 553.*

The effect of the misjoinder of these defendants is not, however, to vitiate the verdict as to the receiver.    Nothing was alleged in the pleadings and no evidence was given at the trial, showing any liability of the railroad company.    And not even at common law in actions for torts was a misjoinder of defendants available to those who were properly sued.    The plaintiff might succeed as to some and fail as to others.

A motion for a new trial was filed on the ground of want of evidence to support the verdict, error in the instructions, excessive damages, etc.

The facts, as shown by the bill of exceptions, were as follows: Plaintiff got on the train at Forrest City, with the intention of going to Brinkley. Just on the outskirts of Brinkley the track of the Texas and St. Louis Railway, popularly known as the "Paramore Road," crosses the track of the Memphis and Little Rock Railroad. When the train on which plaintiff was a passenger had arrived within a short distance of the station at Brinkley, the brakeman, as usual, called out the name of the station. The train ran on a few paces further, and arriving at the crossing of the Texas & St. Louis Railway, stopped a few moments, as is customary, before crossing the track of another road. The night was dark. The plaintiff thought he had reached his destination. He arose from his seat, went out on the platform, and looked out on one side. He saw no platform or other indication of a depot, only a bright light ahead, which he took to be the headlight of a locomotive. The plaintiff then went across the platform to the other side. Just at this time the train began to move slowly forward. The plaintiff, supposing that he was about to be carried beyond his station, stepped off, fell and was taken in an insensible condition to a doctor's shop.

It is contended that, on this state of facts, the plaintiff is not, as a matter of law, entitled to recover, and that no shadow of negligence is shown.

The appellants rely on the case of *Lewis v. London, Chatham & Dover Railway Co., L. R., 9 Q. B., 66;* also reported in *7 Moak, 119.*

The facts were that plaintiff, a woman, took passage on a train from St. Mary Cray to Bromley. As the train ap-

proached Bromley the name of the station was called out, and shortly afterwards the train stopped, but not until it had carried the plaintiff's car beyond the platform. The plaintiff got up from her seat, and started to descend from the car where it was. Just as she was stepping from the train, it was backed suddenly for the purpose of bringing all the cars abreast of the platform, and the plaintiff fell, and was injured. It was held that she was not entitled to recover.

Mr. Justice Blackburn said : " It appears that the train was coming up to the station, and some official on the platform called out 'Bromley—Bromley !' Calling the name of the station, I understand, and have always understood, to mean this, that it is an intimation to all who are traveling by the train that the station at which the train is about to stop is that particular station. Calling out the name of the station is not an invitation to alight."

But this case has been virtually overruled by *Bridges v. North London Railway Co., Law Rep.*, 7 *H. L.*, 213; *S. C.*, 9 *Moak*, 165. The action was tried before the same judge, Blackburn, at nisi prius, and the evidence disclosed a similar state of facts. But the case was withdrawn from the consideration of the jury. This was held to be error. No positive rule of law was laid down as to the effect to be given to calling out the name of a station, but Mr. Baron Pollock, in his opinion before the Lords, concurred in the opinion of Mr. Justice Willes in the same case in the Exchequer Chamber : " It is an announcement by the railway officers that the train is approaching, or has arrived at the platform, and that the passengers may get out when the train stops at the platform, or, under circumstances induced and caused by the company, in which the man reasonably supposes he is getting out at the place where the company intended him to alight."

In *Weller v. London, etc. Ry. Co., Law Rep., 9 C. P., 126;
S. C., 8 Moak's Eng. Rep., 441,* on the approach of a train
to the station, a porter called out the name of the station
and the train was brought to a stand-still. The plaintiff,
a season-ticket holder, accustomed to stop there, stepped
out of the carriage in which he was seated, and falling
upon an embankment was injured. The train had over-
shot the platform. It was night and there was no light
near the spot, and no caution was given, nor anything
done to intimate that the stoppage was a temporary one
only, or that the train was to be backed. Brett, J., said:
" I agree that to call out the name of the station before
the train has come to a stand-still is no evidence of negli-
gence on the part of the company. I also agree that
merely overshooting the platform is not negligence. But
if the porter has called out the name of the station, and
the engine-driver has overshot the station, and the train
has come to a stand-still, the company's servants are guilty
of negligence if they do not warn passengers not to alight.
At all events the jury may from the facts infer negligence."

And the best considered American cases are to the same
effect. Thus in *Central R. R. Co. v. Van Horn, 38 N. J.
Law, 133,* Beasley, C. J. said:

" The court would not be warranted in saying that it is
not negligence to give notice of the approach to a station,
and then to stop the train short of such station, in the
night time. Such a course would naturally tend to jeop-
ard passengers, for it would induce them to believe that
they had arrived at the station designated, and they
would, in the ordinary course, go to the car platform.
At night this must be the inevitable result. It is said, in
the brief of the counsel of the defendant, that it was right
to give the notice at a long distance from the depot, so
that the passengers might prepare to leave the cars. This

may do when the train is not to stop before it reaches the station. When a station is called, the passengers have the right to infer that the first stop of the train will be at such station."

In *Taber v. D. L. & W. R. Co., 71 N. Y., 489,* plaintiff was a passenger on defendant's train; she had a ticket for W.; she was not familiar with that station, but knew it was the next station to C. F., and about three-fourths of a mile therefrom. The night was dark, there was no depot at W., or station light, or anything to indicate the stopping place to a person not familiar with it. She knew when the train passed C. F., and as her evidence tended to show, after the proper interval, so as to run the distance to W., the train came to a full stop; it had in fact run by the station. Before reaching it the brakeman announced the station; several passengers arose to leave; plaintiff then rose from her seat near the center of the car, walked out upon the platform, took hold of the rail, stepped down one step and was in the act of stepping to the second, when the train with a violent jerk started back, throwing her down and off, and she was injured. In an action to recover damages, held that it was a question for the jury, whether in the exercise of reasonable care and prudence, defendant should not have given notice to passengers desiring to alight at the station, that the train had not come to a final stop but would back up, and that the plaintiff was justified under the circumstances in supposing she had reached her destination and in attempting to leave the car; at least that the question of contributory negligence on her part was proper for the jury. See also *Milliman v. New York Central & Hudson River Railroad Co., 6 Thomp. & C., 585; S. C., 3 Abb.; N. C.; affirmed, 56 N. Y., 585.*

In the case of " *The Columbus & Indianapolis R. R. Co. v. Farrell, reported in 31 Ind., p. 408,* the plaintiff was

on the car of the defendant railroad.   The night was dark. The conductor stopped the train and announced the name of the station, "Cumberland."  Plaintiff could not see whether there was any platform or not, or where he was going to alight, but in good faith, relying on the announcement made by the conductor, stepped off in the dark into a culvert twenty feet deep, and was injured, and the Supreme Court of Indiana in passing upon the question of contributory negligence in that case, by approving the instructions, say: " If the plaintiff did not alight from the train until it had been fully stopped, nor until the defendant's servants had announced the name of the station, or it had been announced from the proper and usual place of making such announcements, he had the right to believe that the train had reached a proper stopping place and that he could safely alight, and if he did then alight and did so without knowing the danger of the place, and in consequence of the darkness of the night he had no reasonable opportunity of ascertaining the danger, and he was injured in so alighting, he will be entitled to a verdict."

In Mitchell v. Chicago and Grand Trunk Ry. Co., 51 Mich., 236, S. C. 47 Am. Rep., 566, also relied upon by appellants, the facts of the case as stated by the court were as follows :

" Just before arriving at the junction, and when the train was some 300 or 400 feet from it, the name of the station was called out by the proper person, and the cars came to a full stop, as required by law before reaching crossings.  Plaintiff at once left her seat, and hurried to leave the car.  It does not appear that any person employed on the train noticed her.  She went down the steps where there was no platform or other convenience for landing, and just as she stepped off, the cars were suddenly started again to go forward to the depot, and she fell, and

broke her ankle." And it was held the plaintiff had no right of action.

But that case is distinguished from the present in several particulars. The accident happened during daylight, and that is a material circumstance in this class of cases. Then no announcement was made or other invitation given to alight. And again, before reaching the place, the conductor notified her he would escort her to the depot of the connecting line.

To apply the principles discussed to the case in hand: It was no negligence in the receiver's servants to stop the train before crossing the track of the St. Louis & Texas road. That was only a proper precaution to prevent collision. It would, also, have been no negligence to announce the name of the station before stopping, provided passengers had been warned to keep their seats, or otherwise informed that the stop was only a temporary one. But to make the announcement without such caution, was an invitation to passengers bound for that station to alight when the train came to a stop, and was a circumstance from which a jury might well infer negligence, if, in attempting to alight, an injury was received. The charge of the court and its refusal to charge were in accordance with these views.

All that is left in this case is the question of damages. The plaintiff received a severe cut upon the head, leaving a permanent scar; and the ends of his fingers on one hand were mashed off. As we have stated, he lost consciousness when he fell. He was confined to his bed for four weeks and disabled from work for four months. His bill for medical attendance and medicines was between $25 and $35. He lost thirty pounds of flesh and suffered great physical pain, his hand having risen and become a running sore. His labor on the farm at that time of the year was worth $25 a month.

The assessment of damages was, perhaps, somewhat too

liberal to the plaintiff. Yet there can be, from the nature of the case, no exact measure of compensation for physical pain and mental anguish which is inseparable from it. Under such circumstances, appellate courts are loth to interfere merely because damages seem excessive. The jury and the trial judge, before whom the plaintiff's wounds were exhibited at the distance of nearly a year from the happening of the accident, could more justly estimate the extent of those injuries than we can possibly do from the transcript.

The judgment against the railroad company is arrested, and the judgment against the receiver is affirmed.